UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RICHARD HUNT,

                          Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE OFFICER HUDSON (SHEILD#581),
NASSAU COUNTY POLICE SERGEANT GARY J.
RUGGIERO, NASSAU COUNTY DETECTIVE
BRUCE F. COFFEY, NASSAU COUNTY
OFFICERS JOHN DOE 1-5 (fictitiously named),
individually, and NASSAU COUNTY
ASSISTANT DISTRICT ATTORNEYS
JOHN DOE 1-5 (fictitiously named), individually,

                          Defendants.
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★ JAN 13 2011 ★

LONG ISLAND OFFICE

Case No.:

**COMPLAINT**

CV 11 0207

<u>JURY TRIAL DEMANDED</u>

FEUERSTEIN, S
BOYLE, M.

      Plaintiff RICHARD HUNT, by and through his attorneys, FRIEDMAN HARFENIST KRAUT & PERLSTEIN LLP, complaining of the Defendants, COUNTY OF NASSAU, POLICE OFFICER HUDSON (SHEILD#581), NASSAU COUNTY POLICE SERGEANT GARY J. RUGGIERO, NASSAU COUNTY DETECTIVE BRUCE F. COFFEY, NASSAU COUNTY POLICE OFFICERS JOHN DOE 1-5 (fictitiously named), individually, and NASSAU COUNTY ASSISTAN DISTRICT ATTORNEYS JOHN DOE 1-5 (fictitiously named), individually (hereinafter collectively the "Defendants"), respectfully alleges as follows:

**PARTIES**

      1. The plaintiff, RICHARD HUNT (hereinafter the "Plaintiff"), is a citizen of the State of New York who currently resides at 50 Biltmore Boulevard, Massapequa, New York.

      2. The County of Nassau (hereinafter "Nassau") is a municipal subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

3. Nassau County Police Officers , POLICE OFFICER HUDSON (SHEILD#581), , POLICE SERGEANT GARY J. RUGGIERO, ,DETECTIVE BRUCE F. COFFEY are police officers who are being sued in their individual capacities and are employed by the County of Nassau. Upon information and belief, at all relevant times described herein, the police officers were acting under color of state law within the scope of their employment as police officers employed by Nassau.

4. Nassau County Police Officers John Doe 1-5 (hereinafter the "Officer" or collectively "Officers") are police officers who are being sued in their individual capacities and are employed by Nassau. Upon information and belief, at all relevant times described herein, the police officers were acting under color of state law within the scope of their employment as police officers employed by Nassau.

5. Nassau County Assistant District Attorneys John Doe 1-5 (hereinafter the "ADAs") are assistant district attorneys who are being sued in their individual capacities and are employed by the Nassau County District Attorney's Office. Upon information and belief, at all relevant times described herein, the ADAs were acting under color of state law within the scope of their employment as assistant district attorneys employed by Nassau.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983 in that the actions taken by the municipal defendants violated the Plaintiff's civil rights.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events occurred in Nassau County, which is located in the Eastern District of New York.

## NATURE OF THE CASE

8. This is an action seeking recovery for deprivation of the Plaintiff's civil rights

guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution committed by the above-named municipal defendants.

9. Plaintiff bases this action upon his illegal seizure by various members of the Nassau County Police Department on March 31, 2010 and the subsequent malicious prosecution by various members of the Office of the District Attorney of Nassau County that ended with all charges being dismissed on July 26, 2010.

## STATEMENT OF RELEVANT FACTS

10. Plaintiff has lived with Rachael Giannetti (hereinafter "Giannetti") for six years at 50 Biltmore Boulevard, Massapequa, New York, and the two have a daughter together.

11. On March 27, 2010, the Plaintiff and Giannetti had a verbal argument that ended when the Plaintiff drove away from their house in Giannetti's car.

12. Giannetti subsequently called the police and made a statement that alleged that the Plaintiff pushed her up against a wall, put his hands around her throat, and said he would smash her head and watch her bleed.

13. The Officer who took this statement (hereinafter the "Original Statement") and filed a Domestic Incident Report worked in the 7th Precinct of the Nassau County Police Department (hereinafter the "7th Precinct").

14. Subsequently, on March 27, 2010 and later on March 29, 2010, Giannetti went to the 7th Precinct building, located at 3636 Merrick Road, Seaford, New York, and attempted to retract the Original Statement and provide a truthful statement instead stating that no such threats were ever made.

15. Although Giannetti advised the Officers and/or Defendant's at the 7th Precinct that the Original Statement was untrue, that she did not want the Plaintiff to be arrested, and that she was prepared to give a revised and corrected statement, the Officers and/or Defendant's refused to

take it and told Giannetti that the matter was out of her hands.

16. Because the defendants would not take her statement, Giannetti approached Michael Shoshnick, Esq., the Plaintiff's attorney (hereinafter "Shoshnick"), and gave him a signed and notarized statement that retracted the allegations in the Original Statement.

17. Shoshnick also received a statement on March 31, 2010 from Greg Haggerty, Ph.D. (hereinafter "Haggerty"), who stated that he was seeing the Plaintiff and Giannetti for couple's therapy and that they denied and did not evidence any physical altercation or threat of physical altercation (hereinafter the "Haggerty Statement").

18. Shoshnick subsequently contacted the defendants at 7th Precinct to present the statements from Giannetti and Haggerty so that the Plaintiff would not be arrested.

19. Regardless of Giannetti's retraction of the Original Statement and the Haggerty Statement, the defendant(s) told Shoshnick that the Plaintiff would be arrested and that he should surrender himself.

20. On March 31, 2010, and despite the complete lack of any probable cause in the matter, Plaintiff presented himself at the Nassau County 7th Police Precinct and was arrested by defendant(s).

21. The Plaintiff spent the night of March 31, 2010 in jail and was subsequently arraigned on April 1, 2010 and charged with menacing in the third degree by the defendant(s).

22. The Plaintiff appeared in court on April 5, 2010 and again later on May 18, 2010.

23. This charge was subsequently dismissed in its entirety on July 26, 2010 under Criminal Procedure Law §170.30.

## AS AND FOR PLAINTIFF'S
## FIRST CLAIM FOR RELIEF FOR VIOLATIONS OF HUNT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS FOR FALSE ARREST AGAINST COUNTY FOR OF NASSAU, NASSAU COUNTY POLICE OFFICER HUDSON (SHEILD#581), NASSAU COUNTY POLICE SERGEANT GARY J.RUGGIERO, NASSAU COUNTY DETECTIVE BRUCE F. COFFEY, NASSAU COUNTY POLICE OFFICERS JOHN DOE 1-5

24. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 22 with the same force and effect as if fully set forth herein.

25. On March 31, 2010, the Plaintiff was intentionally detained by the Officers.

26. Following his arrest, the Plaintiff was incarcerated for a period of 24 hours.

27. In detaining the Plaintiff, the Officers were acting under color of state law and within the scope of their employment by the Nassau County Police Department.

28. The Plaintiff was aware of his detention.

29. The Plaintiff did not consent to being detained.

30. The Plaintiff's detention was not privileged as the defendant's testified falsely before the Grand Jury.

31. The Plaintiff's detention was not privileged as the ADAs knowingly offered perjured testimony before the grand jury.

32. The Plaintiff's detention was not privileged as the indictment obtained against the Plaintiff was procured through fraud.

33. As a result of his illegal detention, the Plaintiff's Fourth and Fourteenth Amendment rights were violated.

34. As a proximate result of the Defendants' intentional and malicious actions, the Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees,

associated legal expenses, and other special damages, and has suffered great mental anguish causing damages in an amount to be determined at trial, plus punitive damages and attorney's fees.

### AS AND FOR PLAINTIFF'S
### SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF HUNT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS FOR MALICIOUS PROSECUTION AGAINST COUNTY FOR OF NASSAU, NASSAU COUNTY POLICE OFFICER HUDSON (SHEILD#581), NASSAU COUNTY POLICE SERGEANT GARY RUGGIERO, NASSAU COUNTY DETECTIVE BRUCE F. COFFEY, NASSAU COUNTY POLICE OFFICERS JOHN DOE 1-5, NASSAU COUNTY ASSISTANT DISTRICT ATTORNEYS JOHN DOE 1-5

35. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 with the same force and effect as if fully set forth herein.

36. On April 1, 2010, the Plaintiff was arraigned in Nassau County Court and charged with menacing in the third degree.

37. As a result of the fraudulently obtained indictment, the Plaintiff was required to pay for the services of a criminal defense attorney at a cost to him.

38. As a result of the fraudulently obtained indictment, the Plaintiff was required to make appearances in Court on April 5, May 18, and July 26, 2010.

39. The Defendants participated in the investigations of allegations against the Plaintiff as well as the criminal prosecution against him.

40. The criminal prosecution was commenced despite the Defendants' knowledge that the Plaintiff did not make any threats against Giannetti and that probable cause for the arrest and initiation of the prosecution did not exist.

41. The criminal prosecution was continued after the Defendant(s) knew that had no probable cause for the original arrest.

42. The criminal prosecution was continued after the Defendant Assistant District

Attorney's knew that had no probable cause for the original arrest.

43. The Defendant(s) arrested the Plaintiff even after they learned that there was no incident and that Giannetti had lied in her Original Statement the Officers.

44. By participating in the arrest and prosecution which they knew lacked probable cause, the Police Personnel and the ADAs acted with malice against the Plaintiff.

45. The defendant(s) prosecuted the Plaintiff the malice independent of their lack of probable cause.

46. As a result of the Defendants' malicious prosecution, the Plaintiff's Fourth and Fourteenths Amendment rights were violated.

47. As a proximate result of Defendants' intentional and malicious actions, the Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damage in an amount to be determined at trial, plus punitive damages and attorney's fees.

### AS AND FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF HUNT'S COMMON LAW RIGHTS AGAINST MALICIOUS PROSECUTION AGAINST COUNTY FOR OF NASSAU, NASSAU COUNTY POLICE OFFICER HUDSON (SHEILD#581), NASSAU COUNTY POLICE SERGEANT GARY RUGGIERO, NASSAU COUNTY DETECTIVE BRUCE F. COFFEY, NASSAU COUNTY POLICE OFFICERS JOHN DOE 1-5, NASSAU COUNTY ASSISTANT DISTRICT ATTORNEYS JOHN DOE 1-5
(Malicious Prosecution in Violation of New York State Law)

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 with the same force and effect as if fully set forth herein.

49. On April 1, 2010, the Plaintiff was arraigned in Nassau County Court and charged with menacing in the third degree.

50. That charge was later dismissed in its entirety on July 26, 2010 under Criminal

Procedure Law §170.30.

51. There was no probable cause underlying the arrest of or charge against the Plaintiff because the Officers were aware that Giannetti had retracted her Original Statement.

52. By participating in the arrest and prosecution which they knew lacked probable cause, the Officers and the ADAs acted with malice against the Plaintiff.

53. The defendant(s) prosecuted the Plaintiff the malice independent of their lack of probable cause.

54. As a proximate result of Defendants' intentional and malicious actions, the Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damage in an amount to be determined at trial, plus punitive damages and attorney's fees.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE COUNTY OF NASSAU FOR MAINTAINING A PATTERN AND/OR PRACTICE AND/OR PROCEEDURE WHICH CAUSED THE UNLAWFUL ARREST AND PROSECUTION OF THE THE PLAINTIFF. (Monell Claim)

55. Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

56. Upon information and belief, it was the custom, policy and practice of Defendant(s) to maintain a mandatory arrest policy for domestic incidents.

57. Upon information and belief, it was the custom, policy and practice of NASSAU to conduct inadequate investigations for domestic incidents.

58. Upon information and belief, it was the custom, policy and practice of NASSAU to inadequately supervise the actions and conduct of officers, including the Defendant(s) Police

Officers in their role of investigating domestic incidents.

59. Upon information and belief, it was the custom, policy and practice of NASSAU to continue to employ police officers, including the Defendant(s) Police Officers, after it is known that such officers failed to conduct proper investigation in regards to domestic incidents.

60. Nassau County had a policy to permit arrests without probable cause for domestic incidents.

61. Nassau County had a pattern of practice in which arrest were made without probable cause as a result of their mandatory arrest policy for domestic incidents.

62. Nassau County had a procedure by which Police Officers were compelled to make an arrest in domestic incidents regardless of whether they possessed probable cause.

63. Nassau County trained its officers that arrests were mandatory in domestic incidents regardless of the presence of probable cause.

64. Nassau County failed to supervise its officers to ensure that they possessed probable cause to effectuate arrests as it pertains to domestic incidents.

65. These customs, policies and practices were the moving force, proximate cause, or affirmative link behind the conduct causing plaintiffs injuries.

66. NASSAU is therefore liable for violations of plaintiffs constitutional rights as caused by Defendants as described in more detail in the foregoing paragraphs; and plaintiff has suffered damages therefrom.

67. As a proximate result of Defendant's customs, policies and practices for negligent hiring, improper supervision and improper retention of officers, Plaintiff was greatly physically injured, humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiffs

damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees.

68. No other lawsuits have been brought by the Plaintiff in state or federal court dealing with the same facts alleged herein.

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants as follows:

(a) For compensatory damages against all Defendants in an amount to be determined at trial but in no event less than ONE MILLION DOLLARS ($1,000,000);

(b) For exemplary and punitive damages against all Defendants in an amount to be proved at trial;

(c) For attorney's fees pursuant to 43 U.S.C. §1988 against all Defendants; and

(d) Such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York  
January 5, 2011

Respectfully submitted,

FRIEDMAN HARFENIST KRAUT & PERLSTEIN LLP  
3000 Marcus Avenue, Suite 2E1  
Lake Success, New York 11042  
(516) 355-9600

By: _____  
CHARLES HORN